UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHAEL ANGELO OJEDA and CARMEN ROSA
TORRES OJEDA,

                Plaintiffs,           **REPORT AND RECOMMENDATION**
                                                           **20 CV 3910 (EK)(LB)**

   -against-

OFFICER ALFONSO MENDEZ, *Badge #7899,*
THE POLICE BENEVOLENT ASSOCIATION,
MAYOR BILL DE BLASIO, BONITA E. ZELMAN
ESQ., SETH A. HARRIS, ESQ., ASSEMBLY
MEMBER FELIX W. ORTIZ, and THE CITY OF
NEW YORK,

                Defendants.
-----------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiffs Michael Angelo Ojeda and Carmen Rosa Torres Ojeda, proceeding *pro se,* bring this action alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and the federal civil rights law, 42 U.S.C. § 1983, *inter alia*.

       Defendants move to dismiss plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, including on the ground that plaintiffs' claims are time-barred by the applicable statutes of limitations. Defendant Felix Ortiz additionally moves to dismiss on the basis of legislative immunity.

       The Honorable Eric R. Komitee referred defendants' motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that defendants' motions should be granted, and plaintiffs' Amended Complaint should be dismissed.

# FACTS[1]

On August 27, 2010, plaintiffs' eleven-year-old daughter, Briana Ojeda, had a severe asthma attack and her mother, Carmen Ojeda, rushed her to Long Island College Hospital in Brooklyn by car. Am. Compl. ¶¶ 7.1, 7.2, 7.3, 7.5. En route to the hospital, Carmen Ojeda was stopped by Police Officer Alfonso Mendez who pulled over her vehicle for a traffic violation. Id. at ¶¶ 7.3, 7.8.1. Carmen Ojeda asked Officer Mendez to perform CPR on Briana, but Mendez refused, stating that he did not know how to perform CPR. Id. at ¶ 7.8.2. Carmen Ojeda continued to the hospital where Briana died. Id. at ¶ 7.14.1.1.1. This tragedy gives rise to plaintiffs' instant lawsuit. Id. at ¶ 7.37.2.2.1.1.1.1. The Court has great sympathy for plaintiffs' loss.

At the hospital that day, Michael Ojeda saw then-New York State Assembly Member Felix Ortiz and, although "there was no actual interaction between [Ortiz] and [Michael Ojeda]," he believes that Ortiz appeared at the hospital to begin investigating Briana's death "as an impending lawsuit against the city." Id. at ¶¶ 7.15, 7.16, 7.16.1.1.1.1.1. Plaintiffs allege that Ortiz worked with then-Public Advocate Bill DeBlasio to "[pull] executive strings to obstruct justice." Id. at ¶¶ 7.18. As described by plaintiffs, this was a part of a larger conspiracy, orchestrated by the City and State of New York, which they allege involves:

> … pushing victims to find peace and recovery in murals and street names, or laws, things that do not balance the weight of the losses and injuries that the State and City has inflicted on these aggrieved victims. They put an

---

[1] All facts are taken from plaintiffs' Amended Complaint and are taken as true for the purposes of defendants' motion to dismiss. See Johnson v. Priceline.com, Inc., 711 F.3d 271, 275 (2d Cir. 2013) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)). Plaintiffs' original complaint, ECF No. 1, alleged a number of criminal claims that do not provide a private right of action as well as claims against immune defendants. Judge Komitee dismissed those claims. See ECF No. 49. The Amended Complaint ("Am. Compl.") ECF No. 99, restates some of those dismissed claims (i.e., claims against the New York City Department of Consumer Affairs. Am. Compl. at ¶ 7.28–7.31.1.2.2.1.1.1.1.). As was explained on the record at the March 2, 2021 telephone conference and in the Order granting plaintiffs leave to amend their complaint, "the parties and claims that were dismissed by Judge Komitee's January 7, 2021 Order, ECF No. 49, shall not proceed. The dismissed defendants and claims remain dismissed. The Amended Complaint does not reinstate any dismissed defendants and/or claims." ECF No. 78.

>unreasonable burden on the victims to fix their broken systems and offer absolutely no fair compensation for pain suffering or damages that they themselves are directly liable for.

Id. at ¶ 7.27.1. According to plaintiffs, by distracting victims and their families in this way, New York City and State officials are able to evade liability and payment of compensation. Id. at ¶¶ 7.27.1.1, 7.33.1.3.1.2.2 ("[De Blasio] made every move he could to make sure he secured the money pot for himself and all accomplices and co-conspirators."). See also id. at ¶ 7.36 ("[Defendants Ortiz, Zelman, de Blasio, and the Police Benevolent Association] purposely diverted our attention from deserving justice to just focusing on the loss and pain so the public would help pass [Briana's] law.").

Shortly after Briana's death, plaintiffs retained an attorney, defendant Bonita Zelman, and brought a wrongful death action in Kings County Supreme Court against the City of New York, the New York City Police Commissioner, and Officer Mendez. Id. at ¶ 7.25.1. Plaintiffs allege that Zelman caused "unreasonable delays," "spoliation of evidence," and that she advised the judge on the case how to "destroy all present and future liability." Id. at ¶¶ 7.25, 7.33.1. In 2013, when the Court dismissed the Monell claim against the City of New York, plaintiffs terminated Zelman as their counsel and retained defendant attorney Seth Harris to represent them. Id. at ¶¶ 7.34, 7.34.2.1; see ECF No. 93-3, Torres et al v. City of New York et al, 39 Misc.3d 558 (N.Y. Sup. Ct., Kings County 2013).[2] Ultimately, in 2016, the City, the Commissioner, and Officer Mendez were granted summary judgment, and plaintiffs' case was dismissed. See ECF No. 93-5. Plaintiffs allege that both Zelman and Harris played roles in a "duplicated judicial process" conspiracy, which led to their case being "unlawful[ly] unjust[ly]" dismissed. Am. Compl. at ¶¶ 7.35, 7.35.1.

---

[2] Federal courts may take judicial notice of state court decisions on a motion to dismiss. See Rates Tech. Inc. v. Speakeasy, Inc., 685 F.3d 163, 166 n.3 (2d Cir. 2012)

In the years following Briana's death, plaintiffs also pursued political avenues for redress. Plaintiffs successfully advocated for the passage of "Briana's Law" which requires that police officers be trained in CPR every two years. Id. at ¶¶ 7.37–7.37.2.2.[3] Plaintiffs suggest that Zelman and Ortiz unnecessarily ran up expenses during the effort to pass the law and that plaintiffs were made to bare those costs. Id. at ¶¶ 7.38.1–7.38.1.1. Additionally, they allege that "all conspirators and co-conspirators" collected "kickbacks" from the multiple attempts to pass the law. Id. at ¶ 7.37.2.2.1.1.1.10.1.[4]

## PROCEDURAL HISTORY

Plaintiffs commenced this action on August 17, 2020 by filing their original complaint in the District of Arizona. ECF No. 1. The case was subsequently transferred to this Court. ECF No. 8. Plaintiffs filed proof of service on defendants, ECF Nos. 18, 20, 22–31, 53, 69,[5] and defendants requested a pre-motion conference to move to dismiss the complaint, ECF Nos. 14, 15, 16, 32, 40, 56, 58, 71.

---

[3] Although plaintiffs were successful in this endeavor, they are offended by the lack of public recognition for their significant personal investment in getting Briana's Law passed and signed into law in 2017. Id. at ¶ 7.37.2.2.

[4] Plaintiffs also claim that their business, Brooklyn's Auto Body and Towing, was unfairly subjected to a $5,000 fine from the Department of Consumer Affairs. Am. Compl. at ¶¶ 7.28–7.30.1.2.3.1. Mr. Ojeda contested the violation but was found guilty. Id. at ¶ 7.31.1.2.2. Plaintiffs allege that the cost of the appeal was "unfair, unjust, abusive." Id. at ¶¶ 7.31.1.2.2.1.1.1–7.31.1.2.2.1.1.1.1. Plaintiffs also allege that dismissed defendants Clark Pena and Zacki Tamir co-opted the foundation plaintiffs formed, the Briana Lives Foundation ("the Foundation"), forging founding documents and embezzling funds from the Foundation's bank account. Id. at ¶¶ 7.39–7.40. These claims are brought against defendants who the Court already dismissed from this lawsuit. See supra note 1.

[5] At the March 2, 2021 conference, the Court granted plaintiffs' request for an extension of time to serve defendant Zelman. ECF No. 63. Plaintiffs subsequently filed an affidavit of service listing the incorrect case number and Court. See ECF No. 64. The Court granted plaintiffs a second extension of time to serve Zelman, ECF No. 65, and plaintiffs thereafter filed proof that Zelman was properly served. See ECF No. 69.

4

On January 7, 2021, Judge Komitee reviewed plaintiffs' *pro se* complaint and *sua sponte* dismissed the criminal law causes of action and several immune defendants from the case. See ECF No. 49.[6] The remaining defendants' motions to dismiss plaintiffs' complaint were referred to me for a Report and Recommendation. See Jan. 13, 2021 Order.

At a telephone conference on March 2, 2021, the Court discussed amending the complaint with plaintiffs and granted plaintiffs leave to file an amended complaint. ECF No. 63. Plaintiffs filed a "Memorandum of Facts"[7] in support of their motion to "Amend/Correct/Supplement the Complaint," which the Court construes as plaintiffs' Amended Complaint. ECF No. 78. The instant fully-briefed motion to dismiss plaintiffs' Amended Complaint was filed on September 15, 2021. ECF Nos. 90–98.[8] Plaintiffs oppose defendants' motions. ECF No. 96, ("Opp.").

---

[6] The Court dismissed defendants Dawn Jimenez-Salta, Sylvia Ash, the State of New York, the Clerk's Office of the Kings County Supreme Court, the Office of Court Administration, the New York City Police Department and its Internal Affairs Bureau, and the New York City Department of Consumer and Worker Protection, as immune from the suit. ECF No. 49 at 6–8. Defendants Mitu Maruf, Zaki Isaac Tamir, and Clark Pena were dismissed because the complaint asserted only criminal law claims that do not provide a private cause of action against them. Id. at 9. Plaintiffs moved for reconsideration of Judge Komitee's Order. ECF No. 79. The motion was denied. ECF No. 89.

[7] The Memorandum of Facts, ECF No. 68, was re-docketed as the Amended Complaint. ECF No. 99.

[8] The New York City Law Department, counsel for the City of New York, Mayor de Blasio, and Officer Mendez, requested a one-week extension of the briefing schedule due to a computer system failure in their office. ECF No. 83. The City Law Department was unable to reach plaintiffs to seek their consent for the extension, however, all other defendants consented, and the Court granted the request. ECF No. 85. Plaintiffs subsequently wrote the Court that they did not consent to the request and move the Court to "hold Shi Shi Wang's office [the Office of the Attorney General] in contempt due to a misrepresentation of fact and manipulation of the court." ECF No. 86. The request is denied. The extension of the briefing schedule did not prejudice plaintiffs. Although plaintiffs felt that "the extension was granted against [their] wishes and [they] feel disregarded in this manner," id., plaintiffs are reminded that they were granted several extensions of time in this matter to properly serve Ms. Zelman. Brief extensions of time, especially first requests, are generally granted as a courtesy to the requesting party.

## DISCUSSION

### I. Standard of Review

A court reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Twombly, 550 U.S. at 555–56 (2007); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," id., or "speculative," Twombly, 550 U.S. at 555. A plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

Nevertheless, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal citation omitted)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("[w]e liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (internal citation omitted)).

In deciding a motion to dismiss, in addition to the complaint, the Court may consider documents attached to the complaint, documents incorporated by reference therein, documents that plaintiff relied on in bringing the action which were in plaintiff's possession or of which

6

plaintiff had knowledge, and matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002); Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

## II.     Civil RICO Claims

Section 1962(c) of RICO makes it criminal to conduct "an enterprise's affairs through a pattern of racketeering activity" and provides a private right of action to any person injured "in business or property" due to such a violation. 18 U.S.C. § 1962(c). Plaintiffs allege that defendants conspired to "cover up a criminal negligent homicide in order to evade [liability to plaintiffs]." Am. Compl. ¶ 7.33.1.2.1. Defendants argue that plaintiffs' civil RICO claim is barred by the statute of limitations and that even if the complaint was timely, plaintiffs fail to state a claim under RICO. The Court agrees.

### A.  Statute of Limitations

As explained in more detail below, plaintiffs' claims are all barred by the applicable statutes of limitations. Although "[s]tatute of limitations defenses are affirmative defenses, which normally cannot be decided on a motion to dismiss," S. African Apartheid Litig. v. Daimler AG, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009), an exception is made where (1) the complaint facially shows noncompliance with the limitations period, and (2) the affirmative defense clearly appears on the face of the pleading, Essex Capital Corp. v. Garipalli, No. 17 Civ. 6347, 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018) (citing Tesla Wall Systems, LLC v. Related Companies, L.P., 17-cv-5966, 2017 WL 6507110, at *6 (S.D.N.Y. Dec. 18, 2017) (internal citations omitted)).[9] See also Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015) ("'Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar,' such as lack of timeliness, 'as an

---

[9] The Clerk of Court is directed to send plaintiffs the attached copies of all the unreported cases cited herein.

7

affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" (quoting Staehr v. Hartford Fin. Servs. Grp., 547 F.3d 406, 425 (2d Cir. 2008))).

In plaintiffs' letter to the Court objecting to defendants' request for an extension of the briefing schedule set for the instant motion, plaintiffs wrote, "with the time-[bars] being reasons for their motion to dismiss, it's a little unfair that [defendants] can manipulate and misrepresent facts for [defendants' request for an extension of the briefing schedule]." ECF No. 86. The Court would like to make the following clear to plaintiffs: internal court deadlines, like briefing schedules, are subject to judicial discretion. In contrast, the statute of limitations—which proscribes the maximum amount of time that a party has to initiate a legal proceeding—is *not* discretionary. The statute of limitations is statutorily prescribed, and it is mandatory.

Statutes of limitations are intended to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 348–349 (1944). See also United States v. Kubrick, 444 U.S. 111, 117 (1979) ("[statues of limitations] represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that 'the right to be free of stale claims in time comes to prevail over the right to prosecute them.'") (quoting R.R. Telegraphers, 321 U.S. at 349). For these reasons, statutes of limitations apply even to serious allegations of wrongful conduct. See Gabelli v. S.E.C., 568 U.S. 442, 449 (2013) ("even wrongdoers are entitled to assume that their sins may be forgotten.").

The statute of limitations for a civil RICO action is four years. Rotella v. Wood, 528 U.S. 549, 552 (2000). Accrual begins from the date a plaintiff discovered or should have discovered the

8

injury. Koch v. Christie's Int'l Pub. Ltd. Co., 699 F.3d 141, 148 (2d Cir. 2012); see also Pearl v. City of Long Beach, 296 F.3d 76,80 (2d Cir. 2002) (accrual of a § 1983 action begins "when the plaintiff knows or has reason to know of the injury which is the basis of his action") (2d Cir. 2002); Tech. Opportunity Grp., Ltd. v BCN Telecom, Inc., No. 16-CV-9576, 2019 WL 4688628, at *6 (S.D.N.Y. Sept. 25, 2019) ("It is the RICO injury that triggers the accrual, not the RICO violation") (quoting Angermeir v. Cohen, 14 F. Supp. 3d 134, 158 (S.D.N.Y. 2014)).

Plaintiffs argue that accrual began when dismissed defendant Tamir emptied the bank account for the Briana Lives Foundation, which was "less than 4 years ago." Opp. at 5 ("[Tamir emptying the bank account] is what led to the discovery of all other R.I.C.O. affiliated offenses…"). This is not a correct reading of the discovery rule. As was described in another recent civil RICO action in this Circuit:

> Rotella makes clear that the "critical fact" for purposes of the discovery rule is "discovery of the injury, not discovery of the other elements of the claim." [Rotella, 528 U.S. at 555]. In Rotella itself, the Supreme Court declined to accept plaintiff's proposal of an "injury and pattern discovery rule" and held that accrual of a RICO civil action began at the time of discovery of the injury, not when plaintiff discovered the alleged pattern of racketeering activity.

Roeder v. J.P. Morgan Chase & Co., 523 F.Supp.3d 601, 614 (S.D.N.Y. Feb. 26, 2021). Accrual thus begins when plaintiff first had reason to know of the injury, not when plaintiff discovered all of the elements of the claim. See S.W. ex rel. Marquis-Abrams v. City of New York, 46 F. Supp. 3d 176, 190 n. 10 (E.D.N.Y. 2014) ("Plaintiffs' claims accrued when they knew or should have known of the fact of defendants' actions, whether or not plaintiffs understood those actions to be negligent at the time—accrual does not depend on plaintiff's knowledge that the injury in question constitutes a legal wrong."). Additionally, the statute of limitations "does not start anew each time a plaintiff learns of the involvement of a new defendant." Roeder, 523 F.Supp.3d at 614.

9

Plaintiffs' Amended Complaint states that they were first injured as a result of the alleged conspiracy when the Department of Consumer Affairs terminated Michael Ojeda's towing company from the Directed Accident Response Program ("DARP") and "extorted" $5,000 to "stifle his ability to retain legal counsel to pursue [his] case against the city." Id. at ¶ 7.31.1.1; see also id. at ¶ 7.29.1.2.1 ("I was an active member of the D.A.R.P. for 5 years at the time of my first realization that corruption was in fact happening with them all…"). These events took place around 2012, at least seven years prior to the filing of the instant action. Id. at ¶ 7.30.1. It is thus clear from the Amended Complaint that plaintiffs knew or should have known of their alleged injury more than four years before the instant action was filed.

"If it appears from a complaint that the claims are prima facie time-barred, the burden is on the plaintiff to 'plausibly alleg[e] that they fall within an exception to the applicable statute of limitations.'" In re Merrill, Bofa, & Morgan Stanley Spoofing Litig., No. 19-cv-6002, 2021 WL 827190, at *20–21 (S.D.N.Y. Mar. 4, 2021) (quoting Twersky v. Yeshiva Univ., 993 F.Supp. 2d 429, 436 (S.D.N.Y. 2014), aff'd, 579 F. App'x 7 (2d Cir. 2014)). Plaintiffs' Opposition mentions the doctrine of equitable estoppel, see Opp. at 4, and states that "defendants used ['many actions'] to block [plaintiffs'] ability to properly file suit within the time dictated in any statute of limitations." Id. at 14.

"Under New York State law, 'equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" Horn v. Politopoulos, 628 F. App'x 33, 34 (2d Cir. 2015) (quoting Doe v. Holy See (State of Vatican City), 17 A.D.3d 793, 793 (3d Dep't 2005) (internal quotation marks omitted)). Additionally, plaintiffs must show that they exercised diligence in bringing the action, and that "the action was brought within a reasonable time after the facts giving

10

rise to the estoppel have ceased to be operational." Horn, 628 F. App'x at 35 (quoting Simcuski v. Saeli, 44 N.Y.2d 442, 450 (1978).

Here, neither plaintiffs' Amended Complaint nor their Opposition to defendants' motions allege how they were "blocked" from timely filing the instant action. Accordingly, plaintiffs fail to establish a basis for equitable estoppel and defendants' motions to dismiss plaintiffs' civil RICO claim should be granted on the ground that it is time-barred by the four-year statute of limitations.

### B. Failure to State a Claim

Defendants argue that even if plaintiffs' RICO claims were not time-barred, plaintiffs' Amended Complaint should still be dismissed for failure to state a claim upon which relief can be granted. The Court agrees and although the Court need not reach the argument, in light of plaintiffs' *pro se* status, I address it briefly.

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO Statute […]; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 120 (2d Cir. 2013) (quoting De Falco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001)). To establish a violation of the RICO statute, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." De Falco, 244 F.3d at 306 (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)).

The Supreme Court has defined an enterprise as a "group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven, "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583 (1981); see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004). To survive a motion to dismiss, the allegations in the complaint must, at a minimum, establish an

11

enterprise that is "more than the sum of the participants in a series of independent [predicate acts]." Cedar Swamp Holdings, Inc. v. Zaman, 487 F. Supp. 2d 444, 452 (S.D.N.Y. 2007). Here, plaintiffs fail to allege the existence of an "enterprise." Accordingly, even if the RICO claim was not time barred, the Amended Complaint would be dismissed as plaintiffs fail to plead facts sufficient to establish a RICO claim.

### III. Section 1983 Claims

To sustain a civil rights claim under 42 U.S.C. § 1983, "a plaintiff must allege (1) that the challenged conduct was committed by a person acting under color of state law, and (2) that such conduct deprived [plaintiffs] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.2d 121, 127 (2d Cir. 2010). Plaintiffs' Amended Complaint does not clearly state which defendants are being sued under § 1983. The Amended Complaint only mentions the statute once in a list of "violations." See Am. Compl. at ¶¶ 4.3 4.33. The Court liberally construes plaintiffs' Amended Complaint as asserting § 1983 claims against defendants the City of New York, Mendez, de Blasio, and Ortiz.[10]

#### A. The City Defendants

Defendants move to dismiss any civil rights claims under §1983 as time-barred. The applicable statute of limitations in a §1983 action in New York is three years. Owens v. Okure, 488 U.S. 235, 249–51 (1989); Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009) ("The statute of limitations for claims brought under [s]ection 1983 is governed by state law, and in this case is the three-year period for personal injury actions under New York State law."); Pearl, 296

---

[10] The Court notes that plaintiffs cannot state a §1983 claim against defendants Zelman, Harris, or the Police Benevolent Association as private attorneys and unions are not state actors. Therefore, Zelman, Harris, and the Police Benevolent Association do not act under color of state law. See Harmon v. Matarazzo, No. 97-7485, 1998 WL 639400, at *2 (2d Cir. Mar. 27, 1998) ("[t]he PBA is not a state actor"); Agron v. Douglas W. Dunham, Esq. & Assocs., No. 02 Civ. 10071, 2004 WL 691682, at *3 (S.D.N.Y. Mar. 31, 2004) ("It is well established that as a matter of law a private attorney is not a state actor.").

12

F.3d at 79 (citing N.Y. C.P.L.R. § 214(5)). Although state law supplies the statute of limitations for claims under §1983, federal law determines when a federal claim accrues. Wallace v. Kato et al, 549 U.S. 384, 391 (2007); Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001). The statute of limitations for a §1983 claim begins to accrue "'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir. 1997) (quoting Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980)).

Plaintiffs' §1983 claim against defendants the City of New York and Officer Mendez began to accrue on August 27, 2010, the date of their daughter's death. The statute of limitations thus expired August 27, 2013, approximately seven years before plaintiffs commenced this action. It is unclear whether plaintiffs seek to assert a §1983 claim against defendant de Blasio, however, the Amended Complaint only relates to his prior position as Public Advocate, before his election to Mayor in 2013. Thus, any §1983 claim against him would have expired around 2017.

### B. Assembly Member Ortiz

#### 1. Statute of Limitations

The statute of limitations also bars plaintiffs' §1983 claim against defendant Ortiz. Any claim against Ortiz began to accrue on August 27, 2017, when Briana's Law was signed into law. Although plaintiffs filed the original complaint on August 17, 2020, ECF No. 1, technically within the statute of limitations, they did not serve Ortiz until January 8, 2021, 144 days later. ECF No. 53. While the filing of a complaint tolls a statute of limitations, the failure to complete service within 90 days, as required by Federal Rule of Civil Procedure 4(m), ends the tolling period and recommences the running of the statute of limitations. See Frasca v. United States, 921 F.2d 450, 453 (2d Cir. 1990) ("[The Rule 4(m) service deadline] runs from the filing of the complaint, and the statute of limitations for the underlying claim is tolled during that period. If service is not

13

complete by the end of the [Rule 4(m) period] the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to the termination of the statute of limitations period."); Amnay v. Del Labs, 117 F. Supp. 2d 283, 287 (E.D.N.Y. 2000) ("While the filing of a complaint tolls a statute of limitations, failure to complete service of the summons […] as required by Rule 4(m) ends the tolling period, and the statute of limitations once again begins to run."). Accordingly, any §1983 claim against defendant Ortiz is also time-barred.

### 2. Legislative Immunity[11]

Even if plaintiff had timely served defendant Ortiz, defendant argues that he is immune from suit based on legislative immunity. ECF No. 95-1. The Court agrees. Plaintiffs' allegations against Ortiz stem from his role as a New York State Assembly member. The Eleventh Amendment sovereign immunity doctrine bars claims for damages against a State official in his official capacity. See Kentucky v. Graham, 473 U.S. 159, 169 (1985).

Legislative immunity also "protects a legislator from being sued under Section 1983 in their individual capacity for legitimate legislative acts." Rini v. Zwirn, 886 F. Supp. 270, 282 (E.D.N.Y. 1995). See Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) ("Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'") (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)). There are two factors which determine whether an act or course of conduct is within the sphere of "legitimate legislative activity." The first is "whether the defendants' actions were legislative 'in form,' i.e., whether they were 'integral steps in the legislative process.'" Rowland, 494 F.3d at 89 (quoting Bogan, 523 U.S. at 55–56). The

---

[11] Defendant Ortiz moves to dismiss on the basis of immunity pursuant to Rule 12(b)(1); however, motions raising legislative immunity are properly analyzed under Rule 12(b)(6). State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007) ("[W]e conclude that the District Court improperly construed defendants' motion to dismiss plaintiffs' claims on legislative immunity grounds under Rule 12(b)(1), as opposed to Rule 12(b)(6).").

second is whether "defendants' actions were legislative 'in substance,' i.e., whether the actions 'bore all the hallmarks of traditional legislation,' including whether they 'reflected . . . discretionary, policymaking decision[s] implicating the budgetary priorities of the [government] and the services the [government] provides to its constituents.'" Id.

Here, defendant Ortiz's involvement in the passage of Briana's Law—including the sponsorship of the law in the State Assembly and his work with plaintiffs and others to advocate for the passage of the law—was within the scope of his legislative duties. Accordingly, even if plaintiffs' action was timely served on Ortiz, his motion to dismiss should be granted on the basis of legislative immunity.

## IV.   No Private Right of Action

The first page of plaintiffs' Amended Complaint lists several "civil violations" that do not afford a private right of action. See Am. Compl at 1.[12] These statutes are not otherwise referenced in the Amended Complaint. Plaintiffs' Opposition also cites criminal statutes that are not mentioned in their Amended Complaint. See Opp. at 7–11, 14–16.[13] As was explained to plaintiffs at the March 2, 2021 conference and in Judge Komitee's Memorandum and Order, ECF No. 51, private individuals cannot bring criminal charges in a civil action. Sheehy v. Brown, 335 Fed. App'x. 102, 104 (2d Cir. 2009) ("[F]ederal criminal statutes do not provide private causes of

---

[12] Title 12 U.S.C. § 5531 authorizes the Bureau of Consumer Financial Protection to take action to prevent "a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service." Title 10 U.S.C. § 2737 authorizes the United States Secretary of Defense to settle certain claims against the United States. Title 49 U.S.C. § 33115 authorizes the Attorney General to bring an action to collect civil penalties for violations of the subsection. Title 40 U.S.C. § 123 provides for civil remedies for the commission of fraud against the federal government. Title 40 U.S.C. § 123 provides the federal government with remedies when a person fraudulently obtains a federal benefit. Title 26 U.S.C. § 7434.

[13] Specifically, plaintiffs name Title 18 U.S.C. §§ 241 and 242 (conspiracy against rights and deprivation of rights) and 18 U.S.C. §§ 1594(b) and (c) (the Trafficking Victims Protection Act).

15

action."). Accordingly, these claims should be dismissed.

## V. State Law Claims [14]

Insofar as plaintiffs' Amended Complaint alleges any state law claims, the Court should decline to exercise supplemental jurisdiction over those state law claims since all of plaintiffs' federal law claims should be dismissed. See Valencia v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (citing 28 U.S.C. § 1367(c)(3)) (a federal court should decline to exercise jurisdiction over state law claims where the federal claims are dismissed).

## VI. Leave to Replead

Leave to amend a complaint shall be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "A pro se complaint should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015) (quoting Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks omitted)). "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)).

The Court afforded plaintiffs the opportunity to amend their complaint. Leave to amend should not be granted as repleading could not remedy the untimeliness of plaintiffs' complaint and any amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) (noting where amendment would be futile, denial of leave to amend is proper); DeJesus v. Sears, Roebuck & Co. Inc., 87 F.3d 65, 72 (2d Cir. 1996) (holding that the district court did not abuse its discretion by refusing plaintiff an additional opportunity to amend his pleadings).

---

[14] Plaintiffs also cite what appears to be a state statute from Mississippi, "§ 11-7-165 – Award of damages in civil action," in the list of "Civil Violations" on the first page of the Amended Complaint.

## CONCLUSION

Accordingly, it is respectfully recommended that the Court should grant defendants' motions to dismiss plaintiffs' Amended Complaint. All federal claims in plaintiffs' Amended Complaint should be dismissed. The Court should decline to exercise supplemental jurisdiction over any state law claims alleged and any such claims should be dismissed without prejudice.

The Court acknowledges plaintiffs' traumatic loss. Although federal law does not provide a remedy for their loss, the Court commends plaintiffs' efforts to prevent other families from suffering as they have by enacting Briana's Law. I offer my deepest sympathies and respect.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

                                                             /S/
                                                  LOIS BLOOM
                                                  United States Magistrate Judge

Dated: December 9, 2021
       Brooklyn, New York